WILLIAM J. HOLDEN & another *vs.* ELI W. HOYT & another.

Middlesex. Nov. 23, 1882. — Jan. 8, 1883. DEVENS & HOLMES, JJ., absent.

A corporation is not bound, as to third persons, by interpolations fraudulently inserted in its records, if such third persons have not acted on or seen or known of the existence of the matters so interpolated and appearing to be a part of the records.

A bill in equity may be maintained, by the owner of a promissory note and a mortgage securing it, to restrain a sale of the property covered by the mortgage, and to compel the surrender of the note and mortgage, by a person claiming to hold them under a transfer fraudulently made to him by an agent of the owner.

BILL IN EQUITY, filed June 21, 1879, by the receivers of the Reading Savings Bank, against Eli W. Hoyt and Franklin Fletcher, which, as amended, alleged that, on January 19, 1872, Fletcher conveyed by mortgage deed to said bank a certain parcel of land, with the buildings thereon, situated in Reading; that said property since that date has been the property of the bank; that said property was to be sold by public auction on June 21, 1879, by virtue of a power of sale contained in said mortgage; that the defendant Hoyt claimed to be the assignee of said mortgage by virtue of an assignment dated July 31, 1878, made by Nathan P. Pratt, the then treasurer of said bank; that said assignment, if any was made, was void and of no effect, because made without authority and without right, and in fraud of the bank; that Pratt never made and executed said supposed assignment to Hoyt; and that Pratt never indorsed or assigned to Hoyt, or any other person, the note secured by said mortgage. The prayer of the bill was for an injunction to restrain Hoyt from selling said land, and that said assignment might be declared null and void; and for other relief.

The answer of the defendant Hoyt alleged, among other things, that the note and mortgage were assigned to him by Pratt, in pursuance of authority given to him by the proper officers of the bank, for a good and valid consideration paid by the defendant to the bank; and that they were his property.

When the case came on for hearing, before *Soule,* J., the defendants contended that the plaintiffs had a complete and adequate remedy at law. The judge declined so to rule. The

case was then heard upon the merits; and the judge reported, for the consideration of the full court, the following case:

It was proved that Nathan P. Pratt was the treasurer and secretary of the bank at the time the assignment and indorsement purported to be made, and had been for some years before; that Hoyt negotiated with one Thompson, the agent of Sidney P. Pratt, a son of Nathan P. Pratt, for the purchase of the note and mortgage in question; that Sidney claimed to act for his father, and evidence was introduced tending to show that he did so act; that the full amount of the note and interest was paid to Sidney by a cashier's check on a national bank; that Sidney delivered the note and mortgage, with an assignment thereon purporting to be executed by the savings bank by Nathan P. Pratt, its treasurer and secretary. There was evidence tending to show that the check given to Sidney for said assignment and indorsement was deposited, on the day it was received, in the Blackstone National Bank, to the credit of Nathan P. Pratt as an individual, not as treasurer. The check was produced, and upon it appeared the name of ·Nathan P. Pratt as indorser to the Blackstone National Bank. This indorsement was claimed to be a forgery by the plaintiffs, which was denied by the defendants. The books of record of the savings bank were produced, and the following vote appeared upon the records of the trustees, passed on May 3, 1876, the year before the date of the assignment: "Upon motion of C. P. Judd, one of the trustees, voted the treasurer be authorized to assign, discharge and release all mortgages belonging to the bank." The plaintiffs offered evidence tending to prove that the record of this vote had been altered since it was recorded, the word "assign" being added. C. P. Judd was called as a witness, and testified that he never made the motion to give authority to assign mortgages, but only to release and discharge them. Evidence was introduced on both sides as to the signature of Nathan P. Pratt to the assignment and the indorsements upon the note and check.

Evidence was also introduced to show that a duplicate or forged fac-simile of this note and mortgage, with all the indorsements and stamps thereon, except the indorsements of transfer, was deposited with the mortgage securities of the bank

in place of the original; and also that many other like forged duplicates of other mortgages, that had been taken from the bank by Sidney P. Pratt or Nathan P. Pratt, had been placed among the mortgage securities of the bank, and the same had been accepted as genuine by the committee of the trustees in auditing and passing upon the treasurer's accounts; and that a part of the original mortgages, in place of which said forged duplicates were put, had been assigned by Nathan P. Pratt in the name of the bank, signing his name as treasurer, and a part of the same were delivered to other persons, with a forged assignment of Nathan P. Pratt thereon.

Upon the evidence, the judge found as facts, that the signature of Nathan P. Pratt to the assignment and indorsement was not in his handwriting; that the record of the vote of May 3, 1876, had been altered at some time since it had been originally made, and that the vote as passed did not authorize the treasurer to assign mortgages; that there was no evidence to show when this alteration of the record was made, except that it was before the plaintiffs took possession of the records, upon their appointment; that the cashier's check given for the assignment of the note and mortgage was deposited to the credit of Nathan P. Pratt in his individual capacity, not as treasurer, and that the amount so deposited was drawn out by him by his checks within ten days of its being so deposited; and that the evidence was not sufficient to enable him to determine whether the signature of Nathan P. Pratt upon the back of said check was in his own handwriting or otherwise.

*B. F. Butler*, (*S. Bancroft* with him,) for the plaintiffs.

*J. G. Abbott*, for the defendants.

C. ALLEN, J. The defendants in this case do not rest their argument upon the ground, (which is covered by the decision in the preceding case,) that the treasurer had power to assign the note and mortgage merely by virtue of his office; but they contend that the records, containing the vote of the trustees, show full authority to make the assignment in question; that, as to third persons dealing innocently with the treasurer, the corporation is bound by its records as they stand; and that such third persons, who have invested their money on the faith of the records, ought not to suffer.

In our opinion, the imperfection of this argument consists in this: that it is not alleged, and does not appear, that the defendants invested their money on the faith of the records. We have no doubt that the books and records of a corporation are *prima facie* evidence against it, as admissions ; and, under some circumstances, may be conclusive evidence. But, at the most, a corporation can only be bound conclusively by its records, either when they are the records, duly made by the recording officer, of its proceedings, or when some person, who has had proper access to them, or knowledge of them, has become aware of their contents, and has acted upon the faith that they were the records of its proceedings. And a corporation is not bound, as to third persons, by interpolations fraudulently inserted in its records, where such third persons have not acted on, or seen, or known of the existence of, the matters so interpolated and appearing to be recorded. It is not estopped or bound by such fraudulent addition, unless it is shown to have been negligent in omitting to make due correction of the records, and that some innocent third person has been misled thereby. In the dissenting opinion of Mr. Justice Dewey, in *Amherst Bank* v. *Root*, 2 Met. 522, 544, while maintaining that, ordinarily, a corporation cannot control its own records by introducing oral testimony contradicting the facts as there stated, for the purpose of charging third persons, he nevertheless concedes and declares that the doctrine is not applicable to fraudulent alterations or interpolations. See also *Hart* v. *Frontino & Bolivia South American Gold Mining Co.* L. R. 5 Exch. 111, 114; *In re Bahia & San Francisco Railway*, L. R. 3 Q. B. 584; 1 Lindley on Part. (4th ed.) 141, 160.

The further objection is strongly relied on, that the plaintiffs have a plain, adequate and complete remedy at law, and therefore are not entitled to equitable relief. The only legal remedies suggested as sufficient are a writ of entry, and an action of replevin for the note and mortgage. The bill contains no averment that these are concealed, so that they cannot be come at to be replevied, and no prayer that they shall be delivered up to the plaintiffs. It is certainly true, that both the bill and the amended bill are somewhat meagre in their averments ; but, by the bills and answer, the main issue is distinctly presented,

whether the assignment to the defendant Hoyt was valid or not. As it now appears, the note and mortgage were trust funds, which it was the right and duty of the plaintiffs to get into their own possession, without delay. Hoyt claimed to own them, and had given notice of a sale of the land, which was to take place on the very day when the original bill was brought. The effect of such sale would have been to introduce a new claimant to the land. If the sale produced less than the amount due on the note, Hoyt would hold the note for the balance, and perhaps transfer it to still another person.

In order to prevent equitable jurisdiction, the remedy at law must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. *Boyce* v. *Grundy*, 3 Pet. 210. *Watson* v. *Sutherland*, 5 Wall. 74. It is obvious, in the present case, that a writ of entry would not furnish adequate relief. The value of the land might be less than the amount of the note. The value of the note itself, as an investment, might be greater than the face of it. Even if, under the doctrine of *lis pendens*, a grantee from Hoyt would have no greater rights than Hoyt, the plaintiffs should not for this reason be deprived of the more effectual protection of an injunction. *Hood* v. *Aston*, 1 Russ. 412, 416. 2 Story Eq. Jur. § 908. The specific possession of the mortgage, even if obtainable by a writ of replevin, would not be an adequate protection, since purchasers might rely on the record. The remedy by replevin is at best of limited utility in such a case, either as to the mortgage or note, and is attended with the burden of giving a bond to the defendant in double the appraised value of the property replevied. In most instances, it probably would not be found available, by reason of the difficulty of obtaining the articles without a breach of the peace. Replevin as a possible remedy has existed not only by statute, but at common law. *Maxham* v. *Day*, 16 Gray, 213. *George* v. *Chambers*, 11 M. & W. 149. 3 Kent Com. 483, note *f*.

But, so far as we have observed, in all the cases heretofore decided, the objection that an action of replevin would have furnished an adequate remedy at law has been taken only in one case, namely, *Sears* v. *Carrier*, 4 Allen, 339; and it was not

there sustained.    An examination of the defendant's original brief in that case shows that no authority was cited in support of the objection; and none has been cited in this case.    Compelling the delivery up of deeds and notes has been a common method of equitable relief.    1 Story Eq. Jur. § 700.    *Hood* v. *Aston, ubi supra.    Fuller* v. *Percival,* 126 Mass. 381.    *Fish* v. *French,* 15 Gray, 520.    *Pierce* v. *Lamson,* 5 Allen, 60.    So also of other chattels having a somewhat special value.    1 Story Eq. Jur. §§ 708, 709.    And especially, "where a fiduciary relation subsists between the parties, whether it be the case of an agent or a trustee, or a broker, or whether the subject matter be stock, or cargoes, or chattels of whatever description, the court will interfere to prevent a sale, either by the party entrusted with the goods, or by a person claiming under him, through an alleged abuse of power."    *Wood* v. *Rowcliffe,* 3 Hare, 304; *S. C.* on appeal, 2 Phil. 382, 383.    Under the general prayer for relief, all suitable relief may be granted.        *Decree for the plaintiffs.*