[Civ. No. 3122. First Appellate District, Division Two.—January 29, 1920.]

## CHARLES G. GARDNER, Trustee, etc., Appellant, v. THE CITY OF GLENDALE (a Municipal Corporation), Respondent.

[1] AGENCY—RATIFICATION OF PORTION OF UNAUTHORIZED ACT—EFFECT.—If a principal ratifies any portion of an unauthorized transaction of his agent, he must be deemed to have ratified the whole of it.

[2] ID.—RECEIPT OF BENEFITS.—A principal may not receive the benefits and at the same time disclaim responsibility for the methods adopted by his agent.

[3] ID.—ACQUIESCENCE TO PROVISIONS OF UNAUTHORIZED CONTRACT—RATIFICATION—ESTOPPEL.—Where, with full knowledge of all the facts involved, a principal reaps the fruits of the unauthorized contract of his agent, and for some time yields acquiescence to its provisions, he will be deemed to have ratified it, and will be estopped, as against one who has fully performed the contract on his part, from repudiating it to the injury of the latter.

[4] ID.—PAYMENT OF PURCHASE PRICE TO AGENT—SETTLEMENT EFFECTED BETWEEN PRINCIPAL AND AGENT—RATIFICATION OF AGENT'S ACTS.—In this action to recover the purchase price of certain fire apparatus sold and delivered to defendant through plaintiff's agent, the latter having received payment in full therefor from defendant, the plaintiff, in thereafter effecting with such agent a partial settlement, ratified the act of the agent in collecting the purchase price, notwithstanding that prior to the shipment of the apparatus he notified defendant that payments were to be made direct to him.

APPEAL from a judgment of the Superior Court of Los Angeles County. Curtis D. Wilbur, Judge. Affirmed.

The facts are stated in the opinion of the court.

Benjamin E. Page and Arthur C. Hurt for Appellant.

W. E. Evans and Muhleman & Crump for Respondent.

NOURSE, J.—This is an appeal from a judgment in favor of defendant in an action brought by plaintiff, as

---

2. Ratification of unauthorized act of an agent by silence, note, L. R. A. 1918C, 222.

trustee in bankruptcy of the Knox Automobile Company, to recover the purchase price of a combined hose and chemical fire apparatus sold to the city by the Vance-Canavan Motor Company, as agents for the Knox Automobile Company. The defendant alleged payment and facts upon which it claimed an estoppel against the plaintiff. The court found that all the allegations of the plaintiff's complaint were true, excepting those with reference to nonpayment of the purchase price of the apparatus; and also found that the acts of the agents of plaintiff in collecting the amount of plaintiff's demand from the city were thereafter fully and completely ratified by the plaintiff and constituted full payment by the defendant of plaintiff's claim. As conclusions of law, the trial court found that plaintiff was estopped from the right to recover against the defendant and that the acts of the agents of plaintiff in collecting the amount of plaintiff's demand from the city were thereafter fully and completely ratified and confirmed by the plaintiff and constituted full payment of the claim.

The facts of the case are that in May, 1913, plaintiff's agents, the Vance-Canavan Motor Company, procured from the city of Glendale a contract for the purchase of certain fire apparatus from the Knox Automobile Company. Thereafter the latter company was adjudged bankrupt and the plaintiff was appointed trustee of its estate. The apparatus was constructed according to specifications under his direction, and on September 19, 1913, he addressed to the city of Glendale a letter stating that he was shipping the apparatus to his agents for delivery to the city and requested that the payment be made directly to him and not to his agents. Four days later plaintiff shipped the apparatus to his agents, and at the same time addressed them a letter inclosing an invoice, which read in part as follows: "Sold to Vance-Canavan Motor Car Co., Los Angeles, Cal., 1 Model M 3 Combination #5240 $6250.00. Less 20%, $1250.00, $5000.00. Less 5%, $250.00, $4750.00. For Glendale Fire Dept." The apparatus was received by the agents in Los Angeles, who paid the freight thereon. When delivery was tendered to the city authorities they exhibited to the agents plaintiff's letter of September 19th directing that payment be made to the receiver, whereupon the agents declined to make delivery. The time for delivery specified in the

original contract having long since expired, the city authorities demanded that immediate delivery be made, and, in order to secure delivery, they took from the agents an agreement to indemnify the city against any claim which the trustee might make against it, and thereupon made payment to the agents of the full sum of $6,250 and accepted the apparatus. Some time thereafter the plaintiff wrote to the city authorities inquiring when payment would be made to him, and in reply thereto the city clerk notified him that payment in full had been made through his agents and that the city had taken security to satisfy any claims which the plaintiff might make against it. On February 27, 1914, plaintiff wrote to the city authorities that he had not received the warrant from his agents, and that he, therefore, made demand upon the city for a duplicate warrant. In March of the same year plaintiff came to Los Angeles and conferred with the city authorities and his agents, at which time he was informed by the city authorities that unless an adjustment was made the city would commence suit against him and his agents to have the controversy legally determined. A few days thereafter plaintiff notified the city authorities that some settlement had been made with his agents, but the details of the settlement were not made known to defendant until after this proceeding was instituted. The trial court found that, as a result of his visit in March, 1914, the plaintiff received from his agents the sum of $2,202, which he then agreed should be applied on the money collected by his agents from the city of Glendale, and that at the same time he gave to his agents credit for the sum of one thousand five hundred dollars as commissions due them on account of the sale of the apparatus to the city. The court also found that in March, 1914, one of plaintiff's agents was the owner of certain property and property interests, both real and personal, and that defendant's attorney was aware of those facts at the time and forbore to sue by reason of the statement of plaintiff made at that time regarding the settlement which he had made with his agents; that since said time said agent had disposed of or lost his property and was, at the time of the filing of this action, insolvent. Upon these facts the trial court found that the defendant had made full payment of the purchase price of the apparatus to plaintiff's agents, that

the receipt of the purchase price was ratified and confirmed by plaintiff, and that plaintiff was estopped from any right to prosecute the action against the defendant.

If any one of these special defenses is sound, the judgment in favor of the defendant must be affirmed. That the act of the agents in collecting the purchase price of the apparatus was fully ratified by their principal cannot be doubted. The sale was actually made by the agents with the approval of the principal; and thereafter, and before delivery, the principal notified respondent that it should make payment directly to him; but four days later he shipped the goods to the agents and billed them to him for $4,750, rather than $6,250, the agreed purchase price. He did not bill the apparatus at any time to the city of Glendale, but required the agents to pay the freight on arrival and left it to the agents to make delivery and receive payment without any notice to the agents of the previous instructions to the city authorities that payment should be made directly to him. It was not until after the agents failed to remit to the receiver that he complained of the transaction or made any demand upon the city for the purchase price. Then, without notice to the city authorities, other than to say that some settlement had been made with the agents, he received from them $2,202 in cash and allowed them one thousand five hundred dollars on account of their commissions due from this sale.

[1]. If a principal ratifies any portion of an unauthorized transaction of his agent, he must be deemed to have ratified the whole of it. [2] A principal may not receive the benefits and at the same time disclaim responsibility for the methods adopted by his agent. [3] The acceptance of the benefits of the transaction by the principal constitutes the ratification of the acts of his agent. The supreme court aptly stated the rule in *Gribble* v. *Columbus Brewing Co.,* 100 Cal. 67, 71, [34 Pac. 527], as follows: "And where, with full knowledge of all the facts involved, a principal reaps the fruits of the unauthorized contract of his agent, and for some time yields acquiescence to its provisions, he will be deemed to have ratified it, and will be estopped, as against one who has fully performed the contract on his part, from repudiating it to the injury of the latter."

[4] The facts of this case are controlled by the rule stated, and further discussion of the points raised is unnecessary.

The judgment is affirmed.

Langdon, P. J., and Brittain, J., concurred.